SO ORDERED: June 10, 2010.





Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PAIN MANAGEMENT CENTER | ) | CASE NO. 08-10555-AJM-11 |
| OF SOUTHERN INDIANA, P.C. | ) | |
| | ) | |
| PAIN MANAGEMENT & SURGERY | ) | Case No. 08-10560-AJM-11 |
| CENTER OF SOUTHERN INDIANA, | ) | |
| INC. | ) | |
| | ) | Case No. 08-10557-AJM-11 |
| COMPREHENSIVE SPINE CARE, P.C. | ) | |
| | ) | Jointly Administered under |
| Debtors | ) | Case No. 08-10555-AJM-11 |

**ORDER ALLOWING CLAIM OF VERA FOLEY
WITH LEAVE TO FILE AFFIDAVIT FOR ATTORNEY FEES**

This matter came for hearing on April 2, 2010 before the Court regarding the Debtors' objection to the claim of Vera Foley. For the reasons stated below, the Court allows the claim as filed as a general unsecured claim, and grants Foley's attorney leave to file an affidavit for attorney fees.

1

*Background*

Vera Foley ("Foley") is a certified family nurse practitioner whom Pain Management Center of Southern Indiana ("Pain Management Center"), one of the jointly administered debtors, hired in November, 2005 to work in its Vincennes, Indiana facility. Foley's employment was to be for one year, starting on January 3, 2006. Section 4.4 of the November 10, 2005 Employment Agreement (the "Employment Agreement") between Foley and Pain Management Center provided:

Section 4.4 Vacation/ Meeting Time / Personal Days.  [Foley] will be entitled to four (4) paid weeks for vacation, professional activities, and continuing education, and four (4) paid personal days, during each calendar year. [Foley] shall take such paid absences at such times as shall be approved by the Directors of [Pain Management Center].  Such paid absences shall not be cumulative from year to year; any time not taken at the end of a year shall be forfeited.

Foley worked for Pain Management Center in 2006 and 2007.  On January 7, 2008, Employment Agreement was amended by Addendum which modified Section 4.4 with respect to the paid vacation and personal days as follows:

Section 4.4 Vacation/ Meeting Time / Personal Days.  [Foley] will be entitled to sixteen (16) paid days for vacation, professional activities, and continuing education, and three (3) paid personal days, during each calendar year. [Foley] shall take such paid absences at such times as shall be approved by the Directors of [Pain Management Center].  Such paid absences shall not be cumulative from year to year; any time not taken at the end of a year shall be forfeited.

(the "Addendum").  On February 4, 2008, Manoj Kumar, Human Resource Manager for Pain Management Center, informed Foley by letter that her Employment Agreement had been terminated, effective February 4, 2008.  Although the letter gave "three months notice", Foley's employment terminated on February 19th.  Pain Management Center closed its Vincennes facility on or about February 20, 2008.

Pain Management Center filed a chapter 11 case on August 27, 2008 and its chapter 11 plan was confirmed on December 21, 2009. On December 30, 2009, Pain Management Center objected to Foley's claim in the amount of $27,653.73, in part because it was untimely filed. The Court did not disallow the claim based on its untimely filing. Pain Management Center also objects to the amount of Foley's claim which consists of both a contract damages and a unpaid vacation component. The present dispute involves only the claim for unpaid vacation. [1]

The 2008 Addendum to the Employment Agreement provides that Foley is entitled to 16 paid vacation days, but does not provide how the vacation pay accrues or to what vacation pay Foley is entitled if her employment is terminated during 2008. Pain Management Center argues that since the Addendum does not provide for how vacation pay vests, accrues or is paid upon termination of employment, the vacation pay should be calculated to accrue on a pro rata basis, throughout 2008. And, Pain Management Center argues that, since Foley could not carry over unused vacation days from year to year, she is entitled only to the pro rata portion of her 16 vacation days she was to receive in 2008. Having worked a month and half in 2008, Pain Management Center argues that Foley is entitled only to 1.8 days of vacation.

Foley contends that, as part of her compensation package she negotiated for

---

[1] Under the Employment Agreement, Foley was entitled to three months' notice prior to termination of her employment. After Foley received the February 4th letter, she was allowed to work only two additional weeks instead of the full remainder of three months. Foley had eleven (11) additional weeks of guaranteed employment which amounted to $11,846.23 in salary. This amount is the "contract damages" portion of Foley's claim and is not disputed. Pain Management Center objected to Foley's claim in part on the basis that it was not entitled to priority under 11 U.S.C. §507(a)(4). The parties agree that Foley's claim is not entitled to such priority and further agree that such claim for unpaid vacation, in whatever amount, is a general unsecured claim and shall be treated accordingly under the confirmed chapter 11 plan.

2008, her vacation days accrued immediately when the January, 2008 Addendum was executed and that she is entitled to vacation pay for the full sixteen days, despite the fact that she worked only a month and half in 2008.  Foley introduced into evidence Foley's last pay stub dated February 4, 2008 which indicated *accrued* vacation of 128 hours and *accrued* personal time of 24 hours, which translates to 16 vacation days and 3 personal days.  Pain Management Center's business coordinator, Manoj Kumar, testified that the accrual balances were what Foley would be able to use *if she were still employed at Pain Management Center*. However, Mr. Kumar likewise testified that nothing in the Employment Agreement provided that Foley forfeit her paid vacation days upon termination of her employment.

Neither the Employment Agreement nor the Addendum provide how vacation days vest; certainly neither provides that Foley had to work to a date certain in order to be entitled to them.   There was no evidence presented that Pain Management Center had a employee handbook that addressed this issue.  Pain Management Center contends that, in the absence of such provision, the vacation days accrue pro rata.  *Die & Mold, Inc. v. Western*, 448 N.E.2d 44 (Ind. Ct. App. 1983); *Damon Corp. v. Estes,* 750 N.E.2d 8981 (Ind. Ct. App. 2001).  However, the Court finds that applying a pro rata approach to the vacation days presents a physical impossibility.  If the 16 vacation days accrued incrementally throughout all of 2008 as Pain Management Center suggests, then certainly Foley would still be earning a portion of those 16 days on December 31st.  If Foley, pursuant to the Employment Agreement and the Addendum, was not allowed to carry over unused vacation to the following year, how would Foley

take the "full" 16 vacation days in 2008?  Assuming the 16 days accrue evenly throughout the 12 months of 2008, Foley would accrue approximately a day and a third each month (1.33 days).  She would not have accrued the full day and a third attributable to December until the completion of her shift on December 31st.  However, she would not be able to use this time since this one and a third days would not carry over to the following day, January 1, 2009.  Consequently, if Pain Management Center's position regarding the pro rata accrual of vacation days is correct, Foley, at best, would have been able to use only 14.67 days of vacation time during 2008.

      Rather, the Court finds that the 16 vacation days were part of the compensation package for which Foley bargained and for which Pain Management Center gave her in exchange for her services rendered to Pain Management Center in 2008.  Although not entirely clear from the record of the hearing on this matter, it appears that Foley had to have worked for Pain Management Center in 2007 as a condition precedent to receiving the vacation days in 2008.  Regardless, Foley's last pay stub provided for an 'accrual balance" of 16 days. "Accrue" means "to come into existence as an enforceable claim or right", "to arise". *Black's Law Dictionary* (8th ed., 2004), ""to augment", and, in the past tense, "vested". *Black's Law Dictionary*, (6th ed. 1990). The Court is convinced that Foley had the right, whether it be by having fulfilled a condition precedent or by negotiation of a new employment contract, to take all 16 vacation days as of the date her employment was terminated, with the only limitation being that she had to consult with Pain Management Center's directors as to when the vacation days would be scheduled.  Accordingly, the Court finds that Foley is entitled to compensation

5

for 16 vacation days.

Pain Management Center does not dispute that vacation days are deferred compensation and thus "wages". *Die & Mold*, 448 N.E.2d at 46-47. Indiana's Wage Claim statute, Ind. Code §22-2-9-1, et seq., governs wage disputes where the wage claimant's employment was terminated involuntarily. [2] *St. VIncent Hospital and Health Care Center, Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002). That statute provides that "the provisions of IC 22-2-5-2 apply to civil actions initiated under this subsection by the attorney general or his designee". Ind. Code §22-2-9-4(b). Ind Code §22-2-5-2, in turn, provides for payment of liquidated damages of 10% of the amount due for each day the wages remain unpaid, not to exceed double the amount of wages due. That provision also allows the claimant to recover as costs a reasonable attorney fee. Foley testified that her gross weekly salary was $1076.93 and that she was owed 3.8 weeks of vacation time. Based on that testimony, Foley's vacation pay claim amounts to $12,277.00. [3] This amount, however does not include reasonable attorneys fees to which Foley is entitled under Ind. Code §22-2-5-2. The undisputed contract damages claim is $11,846.23. Accordingly, the Court finds that Foley holds an allowed general unsecured claim of $24,123.23, before an award of reasonable attorney fees. Counsel

---

[2] Actions under the Wage Claims statute must first be referred to the Commissioner of the Indiana Department of Labor who in turn may refer the prosecution of the claim to the Indiana Attorney General or any attorney admitted to the practice of law in Indiana. Ind. Code §22-2-9-4(b). On April 8, 2008, Foley's counsel obtained such referral and thus is authorized to prosecute's Foley's claim as the Attorney General's designee. *Plaintiff's Complaint for Damages and Injunctive Relief and Request for Trial by Jury, filed April 14, 2008 in the Knox Superior Court*, attached as Part 6, to Claim 53-1, filed by Vera Foley.

[3] This sum is calculated as follows: $1076.93 times 3.8 =$4092.33, which is the amount of Foley's actual damages. Ind Code §22-2-5-2 caps liquidated damages at double the amount of actual damages, and thus, Foley's liquidated damages are $8184.66. The aggregate of Foley's actual and liquidated damages is $12,276.99, rounded to $12,277.00.

for Foley shall file an affidavit setting forth in detail the amount of attorney fees sought within 21 days of the date of this order.  Counsel for Pain Management Center shall have 14 days from the date of filing said affidavit to file an objection.  If an objection is filed, the Court will set the matter at its earliest convenience for hearing to determine reasonable attorney fees.

# # #

Distribution:

Nicolette E. Mendenhall, Attorney for Pain Management Center
Robert P. Kondras, Attorney for Vera Foley